**O**

# United States District Court
# Central District of California

DAVID PANTALION,

          Plaintiff,

    v.

SENTRY INSURANCE COMPANY et al.,

          Defendants.

Case № 2:24-cv-07417-ODW (Ex)

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT [42]**

## I.    INTRODUCTION

Plaintiff David Pantalion demanded $1,000,000 in underinsured motorist ("UIM") insurance policy benefits for injuries he suffered in the course and scope of his employment.  Pantalion claims Defendant Middlesex Insurance Company acted in bad faith by rejecting his policy limits demand and delaying payment.  Middlesex moves for summary judgment or partial summary judgment on Pantalion's claims. (Mot. Summ. J. ("Motion" or "Mot."), Dkt. No. 42.)  As the undisputed facts establish that Middlesex based its position on a reasonable interpretation of the UIM policy exclusion, a genuine dispute existed over the value of Pantalion's damages and the Court **GRANTS** partial summary judgment for Middlesex.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

On January 19, 2023, Pantalion was training as a plumbing technician for Yanchewski and Wardell, dba Eco Water ("Eco Water").  (SUF 1, 3.)  Pantalion was acting in the course and scope of his employment when a 2014 Fiat rear-ended the full-size Chevrolet van in which he was a passenger.   (AMF 113; SUF 4, 6.)  Pantalion asserts extensive injuries from the accident.  (AMF 117.)

### A.    The Policy

Middlesex issued a commercial automobile insurance policy to Eco Water ("Policy") covering the van in which Pantalion was a passenger.  (SUF 27, 31.)  The Policy includes UIM coverage limits of $1,000,000.  (SUF 29.)   However, the Policy's "California Uninsured Motorists Coverage—Bodily Injury" endorsement ("UIM Endorsement") excludes coverage where it would be to "the direct or indirect benefit of any insurer or self-insurer under any worker[s'] compensation" law. (SUF 32–33; Decl. Meghan Merila ISO Mot. ("Merila Decl.") Ex. 2 ("Policy") 75, Dkt. No. 42-3.)

### B.    The Claim

In March 2023, Middlesex received notice and acknowledged the January 19 accident. (SUF 34–35.)  Pantalion's counsel informed Middlesex of his representation and advised that Pantalion had not yet opened a worker's compensation claim with Eco Water's workers' compensation carrier.  (SUF 39, 43.)  Pantalion subsequently opened a workers' compensation claim and began receiving treatment but withdrew that claim in June 2023 and instead treated with other providers under medical liens. (SUF 19–21, 24, 59; AMF 119.)

---

[2] The Court derives the factual background, the majority of which is undisputed, from Middlesex's Statement of Uncontroverted Facts ("SUF"), Pantalion's Statement of Genuine Disputes ("SGD") and Additional Material Facts ("AMF"), and Middlesex's Responses thereto, in addition to the parties' clearly and specifically cited evidence.  (SUF, Dkt. No. 42-1; AMF, Dkt. No. 60; Resp. AMF, Dkt. No. 53-1); C.D. Cal. L.R. 56-1 to 56-4.  Although Pantalion objects to portions of Middlesex's evidence, (Pl.'s Objs., Dkt. No. 59), none of the challenged evidence is necessary to the resolution of the Motion and the Court need not resolve those objections.

In mid-November 2023, Middlesex received a demand from Pantalion for $7,320 under the medical payments coverage of the Policy.  (SUF 45–48.)  Middlesex advised that the medical payments coverage did not apply because Pantalion was under the course and scope of employment when injured.  (SUF 49.)

In December 2023, in response to inquiries from Middlesex, Pantalion advised that the at-fault driver's insurance paid Pantalion the policy limit of $15,000.  (SUF 51–53.)  Pantalion also advised that he intended to make a UIM claim under the Policy.  (Merila Decl. ¶ 15, Ex. 10 ("Claim Emails") 151, Dkt. Nos. 42-3, 42-5.)

In January, March, and April 2024, Middlesex reached out to Pantalion to follow up on his UIM claim.  (SUF 54–56.)  On April 22, 2024, Pantalion demanded the UIM policy limits, $1,000,000.  (SUF 29, 57.)  Pantalion informed Middlesex that he had incurred $493,397.38 in medical expenses, estimated $3,500 in future medical care, lost $135,000 in earnings, incurred $222.23 in out-of-pocket expenses, and suffered $5,000,000 in non-economic damages.  (SUF 58; AMF 123–24.)

## C.    Claim Adjustment and Communications

In evaluating the claim, Middlesex used a Bodily Injury Evaluator ("BIE") tool.  (AMF 140.)   Middlesex's claim adjuster, Meghan Merila, included no medical damages in her initial BIE report.  (AMF 145.)   Subsequently, Merila included Pantalion's medical expenses but offset them based on Middlesex's understanding that they were covered by workers' compensation.  (AMF 150, 154, 158; Resp. AMF 163, 253, 256.)   Each BIE thereafter included medical specials with a corresponding offset.  (AMF 253; Resp. AMF 253; Decl. H. Dean Aynechi ISO Opp'n ("Aynechi Decl.") Exs. 2–4 ("BIEs"), Dkt. No. 58-2.)

On May 31, 2024, Merila emailed Pantalion responding to his UIM demand.  (SUF 69.)  She recounted that Pantalion was working at the time of the accident, so, due to the open workers' compensation claim, Middlesex as the UIM carrier was only able to consider damages for pain and suffering.  (SUF 70.)  Middlesex accordingly rejected Pantalion's UIM policy limits demand and extended a counteroffer of

$200,000.  (SUF 70.)  Merila additionally advised that she would soon be out of the office on maternity leave.  (SUF 70.)

On June 7 and 12, 2024, Pantalion sent a number of emails and correspondences regarding Middlesex's counteroffer and requesting information.  (SUF 74–75.)  On June 13, Merila's supervisor, Lisa Strizel, replied and advised that Merila was out on maternity leave and her cases were being transferred.  (SUF 76; AMF 102.)  On June 14, Strizel responded again with some of the information Pantalion had requested.  (SUF 78.)  She also mentioned the workers' compensation claim.  (SUF 79; AMF 186.)  Pantalion responded that the workers' compensation carrier paid $2,292.99 in medical specials and the final lien amount was $9,259.71.  (SUF 82.)  However, Pantalion continued treating with non-workers' compensation medical providers.  (SUF 21, 90; *see* AMF 211 (noting that in July 2024, Pantalion provided additional medical records to Middlesex).)

On June 20, 2024, Middlesex retained counsel, but Pantalion was not immediately notified.  (AMF 201, 218.)  On July 1, Pantalion emailed Strizel twice about the UIM claim.  (SUF 85.)  On July 2, Middlesex advised Pantalion that it had reassigned the claim to Irandi Barnhart.  (SUF 86.)  Barnhart also emailed Pantalion that same day to introduce herself and advise that she was reviewing the file.  (AMF 209; Resp. AMF 205.)  Barnhart did not further substantively respond to Pantalion after she learned Middlesex had retained counsel because she believed counsel would contact him.  (AMF 203, 212; Resp. AMF 205.)

**D.    Arbitration & Litigation**

On July 11, 2024, Pantalion demanded arbitration of his UIM claim, requiring a response by August 12, 2024.  (SUF 87–88.)  On August 1, Pantalion filed this litigation against Middlesex and its parent company, Sentry Insurance Company, for breach of the Policy (i.e., the UIM claim), bad faith delay, and unfair business practices.  (SUF 89; Notice Removal Ex. A ("Compl.") ¶¶ 6–7, 60–115, Dkt. No. 1-1.)  The Court compelled the parties to arbitrate the UIM claim and stayed the remainder

of this action.  (Order Mot. Dismiss & Stay 10, Dkt. No. 18.)   Before arbitration began, the parties settled the UIM demand for $800,000.  (SUF 97.)

After the parties informed the Court that they had settled the UIM claim, the Court lifted the stay in this action.  (Joint Report, Dkt. No. 25; Order Lift Stay, Dkt. No. 26.)   The parties then dismissed Sentry as well as Pantalion's third cause of action.  (Order Dismiss Sentry, Dkt. No. 31; Order Grant Stip. Dismiss, Dkt. No. 41.) Although the parties had fully resolved the UIM claim—the basis for the breach of contract cause of action in this case—Pantalion did not dismiss that cause of action.

Middlesex now moves for summary judgment or partial summary judgment on the remaining claims.  (Notice Mot. 2, Dkt. No. 42.)[3]

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party

---

[3] Pantalion opposes summary judgment, in part, on the grounds that the Court should deny or continue the Motion under Federal Rule of Civil Procedure ("Rule") 56(d) because he has not yet deposed two Middlesex employees.  (Opp'n 2, 21–22, Dkt. No. 58; Aynechi Decl. ¶¶ 72–84, Dkt. No. 58-1.)  Pantalion fails to make the requisite showing under Rule 56(d) so he is not entitled to denial or continuance on this basis.  *See SEC v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (requiring party seeking continuance to identify specific facts likely to be discovered and explain why those facts are essential to precluding summary judgment).

must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## IV.    DISCUSSION

Middlesex moves for summary judgment, arguing no triable issues exist and it is entitled to judgment as a matter of law because: (1) the parties settled the breach of contract cause of action, (2) a genuine dispute about the value of Pantalion's UIM claim precludes bad faith, and (3) Pantalion cannot make the required evidentiary showing for his request for punitive damages. (Notice Mot. 2.)

6

A. **Breach of Contract—UIM Claim**

Middlesex asserts that Pantalion's first cause of action for breach of contract is moot since it has been resolved through UIM arbitration.  (*Id.*)  Middlesex raises this issue in the Notice of Motion but does not develop it in the Motion itself.  (*See generally* Mot.)  Unsurprisingly, then, Pantalion does not respond to the issue.  (*See generally* Opp'n.)

The record and evidence support that Pantalion and Middlesex fully and finally resolved their dispute over Pantalion's UIM claim in July 2025.  The parties filed a Notice stating as much.  (Joint Report 2 ("Please be advised that the underlying UIM claim . . . has settled.").)  This fact is expressly undisputed and supported by evidence. (SUF 97 ("In July 2025, a settlement was reached to resolve the UIM claim for $800,000."); Decl. Irandi Barnhart ISO Mot. ¶ 16, Ex. 20 ("UIM Claim Settlement Agreement"), Dkt. Nos. 42-3, 42-7).)  Nevertheless, to date, Pantalion has not dismissed the cause of action nor have the parties filed a stipulation to that end.

Therefore, the Court **ORDERS Pantalion to SHOW CAUSE**, in writing only and **WITHIN SEVEN DAYS** of the date of this order, why he has not dismissed the first cause of action for breach of contract in light of the July 2025 settlement.

B. **Breach of the Covenant of Good Faith and Fair Dealing—Bad Faith Claim**

Middlesex argues summary judgment on Pantalion's bad faith claim is appropriate based on a genuine dispute regarding the value of the UIM claim. (Mot. 1, 14–17.)  It asserts that the Policy excludes medical expenses covered by workers' compensation so Middlesex reasonably excluded Pantalion's medical expenses, which reduced the value of Pantalion's UIM claim.  (*Id.* at 11–14.) Pantalion asserts summary judgment is not justified based on the genuine dispute rule because Middlesex's position was unreasonable and not maintained in good faith. (Opp'n 1–2.)

*1.    Genuine Dispute Rule*

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing.  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007).  A breach of the implied covenant "involves something beyond breach of the contractual duty itself . . . bad faith implies unfair dealing rather than mistaken judgment."  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (citation modified).

To establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show that (1) the insurer withheld policy benefits due, and (2) the withholding was unreasonable.  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  However, an insurer that denies or delays the payment of policy benefits based on a genuine dispute with its insured as to the amount or existence of coverage does not act unreasonably and thus "is not liable in bad faith."  *Wilson*, 42 Cal. 4th at 723.  "[T]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim."  *Id.*  "A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds."  *Id.*

"The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable."  *Id.* at 724.  "On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably."  *Id.* (quoting *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–62 (9th Cir. 2002)).

*2.    Disputed Position*

In this case, Middlesex relies on a Policy provision that excludes UIM coverage for injuries eligible under workers' compensation, such as medical expenses.  (Mot. 3–4, 13, 16; Policy 75.)  Pantalion argues Middlesex's position is unreasonable, and that

the Policy's exclusion operates merely to *offset* workers' compensation benefits that were paid, but not to *exclude* medical expenses that were eligible for, but not paid through, workers' compensation. (Opp'n 15–17.) Under the genuine dispute rule, the dispositive question boils down to whether Middlesex reasonably interpreted the Policy exclusion.

"[A]n insurance policy is governed by the relevant statutory law in force at the time the policy is issued. Such provisions are read into the policy and become a part of the contract." *Craft v. State Farm Mut. Auto. Ins. Co.*, 14 Cal. App. 4th 1284, 1292 (1993). This includes California's Uninsured Motorist Law, Insurance Code section 11580.2, which permits insurers to exclude or offset benefits covered by workers' compensation law. *Id.*; *see* Cal. Ins. Code §§ 11580.2(c)(4) (exclusion), (h)(1) (offset). "The rights of the parties are to be determined by the terms of their policy, provided such policy grants benefits equal to or greater than is required by the Uninsured Motorist Act." *Lumberman's Mut. Cas. Co. v. Wyman*, 64 Cal. App. 3d 252, 257 (1976). Thus, where the policy conforms to the law and is not contrary to public policy, the plain language of the policy "must be respected." *Id.* at 259.

The Policy's UIM Endorsement excludes coverage that would be to "the direct or indirect benefit of any insurer or self-insurer under any worker's compensation" law. (SUF 33; Policy 75.) This exclusion tracks the language of the Insurance Code, which states that UIM coverage "does not apply either as primary or as excess coverage" in "any instance where it would inure directly or indirectly to the benefit of any workers' compensation carrier." Cal. Ins. Code § 11580.2(c)(4). The exclusion is also consistent with public policy: the California Supreme Court has described the purpose of section 11580.2(c)(4) as "clearly to shift the cost" of an on-the-job injury "sustained by an employee, as the result of the negligence of an uninsured motorist, from the motoring public (who pay the premium for uninsured motorist coverage) to the employer or work[ers'] compensation carrier." *Cal. State Auto. Ass'n Inter-Ins.*

*Bureau v. Jackson*, 9 Cal. 3d 859, 869 (1973). As the Policy exclusion conforms to the law and is not contrary to public policy, the plain language governs here.

California courts have affirmed similar policy exclusions as plainly and unambiguously excluding damages where the injury is eligible for coverage under workers' compensation laws, regardless of whether the employee pursues a workers' compensation claim. For instance, in *Bailey v. Interinsurance Exch.*, the policy excluded bodily injury incurred in the course and scope of employment, where benefits were "payable or required to be paid" under workers' compensation law. 49 Cal. App. 3d 399, 401–02 (1975). The court in *Bailey* found this language clearly aimed at excluding coverage for injuries that were "eligible" for workers' compensation benefits even if unclaimed, thus leaving "the entire matter of medical coverage under those circumstances to the work[ers'] compensation law." *Id.* at 403; *see also Key Ins. Exch. v. Washington*, 7 Cal. App. 3d 209, 211 (1970) (affirming insurance exclusion for bodily injuries eligible for workers' compensation coverage).

Here, although Pantalion contends that Middlesex must provide UIM coverage for his medical expenses unpaid by workers' compensation, a reasonable reading of the Policy exclusion suggests that Middlesex is not so obligated. The Policy exclusion tracks the Insurance Code and is consistent with California public policy. Further, California courts have upheld similar exclusions, bolstering Middlesex's position. *See Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 976 (2003) (finding insurer's position reasonable where at least some courts had agreed with the insurer's interpretation). As such, Middlesex's position excluding medical expenses was not unreasonable, meaning a genuine dispute existed as to the value of Pantalion's UIM claim.

Pantalion argues Middlesex's position was unreasonable and not maintained in good faith so the genuine dispute rule should not apply. (Opp'n 12–15, 19–20.) He offers a number of arguments in support of his position. (*Id.* at 10–20.) Ultimately, however, none of his contentions raises a triable issue of fact concerning the

genuineness of the dispute. As just one example, Pantalion argues that Middlesex failed to adequately investigate his UIM claim because, for instance, it did not retain a medical expert to value his injuries or determine the amount of workers' compensation benefits paid. (*Id.* at 10–11, 15–19.) However, as Middlesex understood the Policy to exclude *all* of Pantalion's medical expenses, neither a medical expert nor the specific amount of workers' compensation benefits paid was necessary. The Court declines to comprehensively recount each of Pantalion's various arguments. Suffice it to say that none of the issues Pantalion raises is material in light of Middlesex's reasonable position that the Policy excludes from UIM coverage all medical expenses, reducing the value of his claim.

Even viewing the facts in the light most favorable to Pantalion, no "jury could conclude that [Middlesex] acted unreasonably." *Wilson*, 42 Cal. 4th at 724. In light of the language of the Policy exclusion, statutory language, public policy, and affirming case law, a genuine dispute existed concerning the value of Pantalion's UIM claim. Therefore, Middlesex is not liable for bad faith. *Guebara*, 237 F.3d at 992 (noting bad faith requires *unreasonable* withholding of policy benefits); *Wilson*, 42 Cal. 4th at 723–24. Accordingly, the Court **GRANTS** partial summary judgment for Middlesex on Pantalion's bad faith claim.

## C. Punitive Damages

Middlesex also seeks summary judgment on Pantalion's punitive damages claim. (Mot. 18–20.) "A plaintiff who is not able to survive summary judgment on an insurance bad faith claim is also unable to survive summary judgment on a related claim for punitive damages." *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1219, 1231 (C.D. Cal. 2002) (citation modified) (citing *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994)). As Pantalion's bad faith claim fails, so too does his claim for punitive damages. Accordingly, the Court **GRANTS** partial summary judgment for Middlesex on Pantalion's punitive damages claim.

11

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Middlesex's Motion for Summary Judgment.  (Dkt. No. 42.)  Specifically, the Court **GRANTS** partial summary judgment for Middlesex on Pantalion's bad faith and punitive damages claims.  Additionally, the Court **ORDERS Pantalion to SHOW CAUSE**, in writing only and **WITHIN SEVEN DAYS** of the date of this order, why he has not dismissed the breach of contract cause of action in light of the July 2025 settlement.

**IT IS SO ORDERED.**

July 8, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**